UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOAN WORKMAN,<br><br>      *Plaintiff*,<br><br>v.<br><br>KENRICK BISSESSAR,<br><br>      *Defendant.* | Civil Action No. 17-1071 (RDM) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joan Workman, proceeding *pro se*, is an employee at the Smithsonian Institution's Renwick Gallery ("the Smithsonian") in Washington, D.C. On May 18, 2017, she filed a complaint in the D.C. Superior Court, alleging that her supervisor at the Smithsonian, defendant Kenrick Bissessar, "walk[ed]-up on [her] back [in] a threatening manner at work." Dkt. 1-3 at 5. She also filed motions for a temporary restraining order ("TRO") and a preliminary injunction, asserting that the "harassment" she was experiencing at her job caused her to "fear for [her] life." *Id.* at 12; *see also id.* at 1–4; 13. Workman's complaint does not seek monetary damages but, rather, requests only that the Court issue "a stay-away order" to Bissessar. *Id.* at 3.

Acting on Bissessar's behalf, the U.S. Attorney's Office filed a notice of removal pursuant to 28 U.S.C. § 1442(a)(1), *see* Dkt. 1, and, nine days later, filed a motion to dismiss Workman's complaint and an opposition to her motions for a TRO and a preliminary injunction, *see* Dkt. 3. The Court held a hearing on Workman's motion for a TRO on June 15, 2017, and, after receiving the Smithsonian's assurance that Bissessar and Workman would not be scheduled to work during the same shifts until Workman's motions were resolved, the Court denied

Workman's request for a TRO. *See* Minute Entry of June 15, 2017. The next day, the Court ordered that Workman respond to Bissessar's motion to dismiss and opposition to her motion for a preliminary injunction on or before July 7, 2017. Dkt. 7. After Workman failed to file a timely response, the Court ordered her to show cause on or before August 4, 2017, why her case should not be dismissed for failure to prosecute or why the Court should not rule on the pending motions to dismiss and for preliminary injunction based on Bissessar's arguments alone. Dkt. 9. To date, Workman has failed to respond to either of the Court's orders.

Because the Court concludes that Workman has failed to demonstrate a likelihood of success on the merits or that she will suffer an irreparable injury in the absence of immediate relief, the Court will **DENY** Workman's motion for a preliminary injunction.

The Court will **DEFER** ruling on Bissessar's motion to dismiss—which raises, among other defenses, failure to effect service—until the time to serve pursuant to Federal Rule of Civil Procedure 4(m) has expired. In light of Workman's apparent failure to effect service to date, however, the Court will order that she either cause process to be served upon Bissessar and proof of service to be filed with the Court or establish good cause for failure to do so no later than September 5, 2017. Failure to make such a filing will result in dismissal of this case.

## I. BACKGROUND

For the past eighteen months, Workman has been employed as a building services worker at the Smithsonian, providing janitorial services at the Renwick Gallery on a part-time basis, including over weekends. Dkt. 3-1 at 1 (Smith Decl. ¶ 3). Bissessar, a facilities services supervisor at the Smithsonian, supervises Workman's shift approximately every third weekend. *Id.* (Smith Decl. ¶ 4).

On August 27, 2016, Bissessar sent Workman home early, "charging her [a]bsent without [l]eave, for failing to clean the museum restrooms." *Id.* (Smith Decl. ¶ 5). Workman "objected to the treatment and reported to [her] supervisors" that, during her interaction with Bissessar, he had "yelled at her and made her feel unsafe." *Id.*; *see also* Dkt. 6-1 at 3–4 (written statements from Workman dated August 31, 2016, and September 28, 2016, describing Bissessar "yelling" at her, "following [her] in a threat[en]ing man[n]er [and] saying . . . go home," and "harass[ing] and threaten[ing] [her] by wa[l]king all up on [her] back"). The assistant building manager looked into the incident and, after requesting written statements from both Workman and Bissessar and interviewing other Smithsonian employees, he sustained Bissessar's "[absent without leave] action." Dkt. 6-1 at 1–2 (Bradd Decl. ¶¶ 4–5, 7). He also determined that there was no "evidence to support" Workman's "allegations of harassment," nor did he find any evidence of "physical contact between [Bissessar] and [Workman] during the August 2016 incident." *Id.* at 2 (Bradd Decl. ¶ 7).

On March 12, 2017, Bissessar and Workman had another antagonistic interaction during which "Workman ignored and walked away from [Bissessar] while he was speaking to her." *Id.* (Bradd Decl. ¶ 8); *see also* Dkt. 3-1 at 2 (Smith Decl. ¶ 7). After "look[ing] into the incident," the assistant building manager issued Workman a letter of reprimand for insubordination. Dkt. 6-1 at 2 (Bradd Decl. ¶ 8). Workman did not assert that the March incident involved any physical contact between her and Bissessar, and the assistant building manager found no evidence to suggest that any had occurred. *Id.*

Two months later, Workman initiated this action by filing a complaint against Bissessar in D.C. Superior Court. *See* Dkt. 1-3 at 5–9. Workman alleges that Bissessar "follow[ed] [her]" and "walk[ed]-up on [her] back with a threatening manner," *id.* at 5, and she asserts claims for

3

"[a]ssault and [b]attery" and "harassment," *id.* at 8. She does not, however, seek money damages, *see id.* at 5 (demand in the sum of "-0-"), but, rather, as explained in the accompanying motions for a TRO and a preliminary injunction, asks only that the Court "give [her] a stay-away order" so that she is no longer left "alone" with Bissessar "at work," *id.* at 1; *see also id.* at 3 ("I need a stay-away order at work from [Bissessar].").

Bissessar removed the case to this Court pursuant to 28 U.S.C. § 1442(a)(1) (permitting removal of suits against federal officers) on June 5, 2017, *see* Dkt. 1, and the Court held a hearing to address Bissessar's motion for a TRO on June 15, 2017. In the course of that hearing, the Court engaged in a lengthy colloquy with Workman in an attempt to discern if there was ever any physical contact between her and Bissessar. Rather than directly respond, however, Workman repeatedly stated only that Bissessar was "all up on [her] back," "was walking up on" her, and was "very close" to her, which made her feel "uncomfortable." At one point, Workman did state that she "felt . . . physical contact" during an altercation, but later, when the Court asked what she meant by that, Workman again explained that Bissessar "was close" to her and "up on [her]." She also said that "he wasn't shoving, he wasn't pushing." And, when the Court asked if Workman simply meant that Bissessar was "close to" her, Workman responded, "Yeah, very, very close."

In the course of the hearing, the Court explained to Workman that, before issuing an injunction, it would need "evidence of an actual threat to [her] personal safety." As the Court further explained, that evidence could take the form of a declaration attesting to what happened, and it informed her that "just [because] you don't have another witness . . . [that] doesn't mean [that] you don't have evidence;" "you were present, you were there[,] and you can . . . describe in detail what happened." The Court also presented Workman with the option of taking the stand

and providing testimony under oath and subject to cross-examination. Workman repeatedly declined to accept that invitation, stating: "No, I don't want to, I don't want to. I'm just sick of it," and "I don't want to talk about anything anymore. I['ve] . . . talked, talked, talked, I'm tired."

Finally, in the course of the hearing, the Smithsonian represented that it would avoid scheduling Bissessar and Workman to work at the same time until Workman's motions were resolved. After the hearing, moreover, the Smithsonian confirmed that it would "not schedule . . . Workman to work with . . . Bissessar until the Court rule[d] on . . . Workman's motion" for a preliminary injunction. Dkt. 6 at 1.

At the conclusion of the hearing, the Court denied Workman's motion for a TRO. The Court explained that, in order to receive the relief she had requested, Workman "need[ed] to show [that] [she] ha[d] a likelihood of success on the merits of [her] claim," but that, based on the record then before it, the Court could not discern the nature of her claims or her legal theories as to why she was entitled to relief. The Court also noted that Workman had failed to provide any evidence suggesting that she was "likely to be subject[ed] to an assault . . . in the future" or that she was likely to suffer any other type of irreparable injury.

The following day, the Court set a briefing schedule on the remaining motions— Workman's motion for a preliminary injunction and Bissessar's motion to dismiss—and informed Workman of the consequences of failing to respond to Bissessar's arguments or failing to offer evidence in support of her motion for a preliminary injunction. Dkt. 7. Under that schedule, Workman was required to file a brief and evidence in support of her motion for a preliminary injunction and to file a brief in opposition to Bissessar's motion to dismiss on or before July 7, 2017. *Id.* A week after that deadline passed, the Court ordered Workman to show

5

cause by August 4, 2017, why her case should not be dismissed for failure to prosecute or why the Court should not rule on her pending motion for a preliminary injunction and Bissessar's motion to dismiss based on Bissessar's arguments alone. Dkt. 9. To date, however, the Court has not received a response from Workman to either of these orders and has not received any evidence or argument supporting Workman's motion for a preliminary injunction or argument in opposition to Bissessar's motion to dismiss.

## II. ANALYSIS

**A.  Preliminary Injunction**

"A preliminary injunction is an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). To prevail, a party seeking a preliminary injunction bears the burden of showing (1) "that [s]he is likely to succeed on the merits," (2) "that [s]he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in h[er] favor," and (4) "that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Although the party attempting to establish these four factors may rely on "evidence that is less complete than in a trial on the merits," *Natural Res. Def. Council v. Pena*, 147 F.3d 1012, 1023 (D.C. Cir. 1998) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)), she nevertheless bears the burden of producing credible evidence sufficient to demonstrate her entitlement to injunctive relief, *see R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 173 (D.D.C. 2015).

"[T]he first and most important" of these four factors is whether the movant "ha[s] established a likelihood of success on the merits." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). In this case, Workman—despite the Court's repeated appeals—has failed to offer *any* evidence showing that she is likely to prevail in her effort to obtain a stay-away order against

6

Bissessar. When the Court offered Workman the opportunity to take the stand and to provide testimony under oath, she declined. And, when the Court informed Workman at the hearing that, if she had "any evidence [she] want[ed] to offer," she could submit it to the Court; subsequently set a schedule for Workman to submit any evidence she wanted the Court to consider and cautioned her about the consequences of failing to do so, Dkt. 7; and then, finally, ordered that she show cause why the Court should not decide her motion without the benefit of any substantive submission from her, Dkt. 9, Workman failed to respond. Because Workman has failed to offer any evidence in support of her motion, the Court can only conclude that she has failed to make the "'clear showing' of likelihood of success" on the merits that is necessary "for a preliminary injunction to be granted." *Sierra Club v. U.S. Dep't of Energy*, 825 F. Supp. 2d 142, 150 (D.D.C. 2011) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

Workman's failure to offer any evidence in support of her claims leaves a second, essential element of the preliminary injunction standard unmet as well: Without any evidence to support her claims, she cannot carry her burden of showing that "[t]he injury [she] complain[s] of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)) (emphasis and first alteration in original). During the TRO hearing, the Court specifically asked "whether [she] ha[d] any evidence of an actual threat to [her] personal safety" that might warrant the immediate issuance of a stay-away order, to which Workman responded, "I don't have any evidence." The evidence that the Court *does* have before it includes a declaration from Jacob Bradd, the assistant building manager for the Renwick Gallery, attesting that, after an extensive investigation, he "found no evidence of physical contact" between Workman and Bissessar and

that he found no "evidence to support . . . Workman's allegations of harassment." Dkt. 6-1 at 2 (Bradd Decl. ¶¶ 7–8). Because Workman has failed to offer any evidence disputing Bradd's declaration, the Court has no basis to find that Workman was subject to a physical assault or to any actionable harassment.

Although Workman's "fail[ure] to meet [her] burden of showing a likelihood of success on the merits . . . alone may be sufficient grounds for denying a preliminary injunction," *Sierra Club*, 825 F. Supp. 2d at 153, her failure to show that she is likely to suffer irreparable injury in the absence of a preliminary injunction removes all doubt that she is not entitled to preliminary relief, *see Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (explaining that a "movant's failure to show any irreparable harm" is, alone, "grounds for refusing to issue a preliminary injunction"). Accordingly, Workman's motion for a preliminary injunction will be denied.

**B.     Motion to Dismiss**

In addition to opposing Workman's motion for a preliminary injunction, Bissessar also moves to dismiss Workman's complaint on multiple grounds, including lack of subject matter jurisdiction, failure of service of process, and failure to state a claim. Dkt. 3. The Court concludes, however, that it would be premature to rule on that motion until after the time afforded to Workman to effect service on Bissessar has expired. *See id.* at 18–19 (raising failure to properly effect service as a reason to dismiss Workman's complaint under Federal Rule of Civil Procedure 12(b)(5)).

Workman filed her complaint in D.C. Superior Court on May 18, 2017. Dkt. 1-3 at 5. When Bissessar removed the case to this Court on June 5, 2017, she apparently had not yet served the complaint in compliance with the rules governing cases brought in the D.C. Superior Court. *See* D.C. Super. Ct. R. Civ. P. 4(i) (requiring service on the U.S. Attorney for the District of Columbia, the U.S. Attorney General, and the officer or employee in the designated manners);

*see also* Dkt. 3 at 19. That, however, does not end matters—indeed, if it did, it would provide an easy way for defendants to prevail in removable cases by simply removing an action before the plaintiff could effect service. Rather, under 28 U.S.C. § 1448, the plaintiff in a removed action who has not served or perfected process may either "complete[]" service under state law or may obtain "new process" and may then effect service "in the same manner as in cases originally filed in" federal court. *See Queen v. Schmidt*, 10-cv-2017, 2015 WL 5175712, at *11 (D.D.C. Sept. 3, 2015) (describing the two distinct procedures for service in removed cases). Federal Rule of Civil Procedure 81(c)(1) adds that, once removed, a civil action is subject to the Federal Rules of Civil Procedure, including Rule 4.

Although the D.C. Circuit has yet to decide the question, a leading commentator and a number of courts of appeals agree that, when considered together, § 1448 and Rule 81(c)(1) mean that the time to effect service specified in Federal Rule of Civil Procedure 4(m) "starts to run upon removal to the federal district court, not the date the action was originated in state court." 4B Charles Alan Wright, Arthur R. Miller & Adam Steinman, Federal Practice and Procedure § 1137, p. 283 (2015); *see also Cardenas v. City of Chicago*, 646 F.3d 1001, 1004 (7th Cir. 2011) (The "same . . . period" provided by Rule 4(m) "applies where suits are removed to federal court from state court, except that the period commences upon the date of removal."); *Rice v. Alpha Sec., Inc.*, 556 Fed. App'x 257, 260–62 (4th Cir. 2014) (per curiam) (same); *Wallace v. Microsoft Corp.*, 596 F.3d 703, 706–07 (10th Cir. 2010) (same).[1] And, even more

---

[1] There is a split in authority on the question whether it is necessary for the plaintiff in such an action to obtain new process from the district court or whether it may complete service using process obtained from the state court. *Compare Beecher v. Wallace*, 381 F.2d 372, 373 (9th Cir 1967) (holding that, "where the defendant has never been put on notice of the state court proceeding prior to removal[,] . . . the federal court cannot 'complete' the state process by permitting it to be served after removal; rather, the federal court must issue new process pursuant to Rule 4 of the Federal Rules of Civil Procedure"), *with Minter v. Showcase Sys., Inc.*, 641 F.

9

importantly for present purposes, Bissessar concedes that "[w]here service is either not made or defective prior to a removal, a plaintiff must effectuate proper service within 90 days of the removal." Dkt. 3 at 19.

Applying that rule, Workman has until September 5, 2017, to effect service. Although that date has not yet passed, the Court directs Workman's attention to Federal Rule of Civil Procedure 4(m), which provides in relevant part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). "Unless service is waived, proof of service must be made to the court." Fed. R. Civ. P. 4(l)(1). Here, Bissessar has filed a motion to dismiss for insufficient service of process, and that motion remains pending. The Court, moreover, hereby provides notice to Workman that the Court will dismiss her action without prejudice unless she effects service and files proof of service with the Court or shows cause for her failure to do so on or before September 5, 2017.

---

Supp. 2d 597, 599–602 (S.D. Miss. 2009) (concluding that "the completion of state service of process . . . following removal to [federal] court" constitutes "proper service of process pursuant to 28 U.S.C. § 1448" and collecting cases on both sides of the split of authority). As this Court sees it, the more substantial question is whether the clock for effecting service restarts upon removal in cases in which the plaintiff seeks to "complete[]" service under state court service rules, or only in cases in which the plaintiff obtains "new process" from the federal district court. *See* 28 U.S.C. § 1448. To avoid any possible difficulty posed by this issue, Workman is free to obtain new process from this Court.

## CONCLUSION

For the reasons explained above, Workman's motion for a preliminary injunction, Dkt. 1-3 at 3–4, 12–13, is hereby **DENIED**, and a decision on Bissessar's motion to dismiss, Dkt. 3, is hereby **DEFERRED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: August 23, 2017